IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| ANDREA LEIGH HUFFSTETLER | ) |
| Plaintiff, | ) |
| v. | ) |
| BURKLE NORTH AMERICA, INC.,<br>ROBERT BURKLE GmbH d/b/a<br>BURKLE PROCESS TECHNOLOGIES, | ) Case Number: 4:19CV00041 |
| and | ) |
| STILES MACHINERY, INC., | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW the Plaintiff, Andrea Leigh Huffstetler ("Plaintiff"), by counsel, and in support of her Motion for Partial Summary Judgment, states as follows:

### STATEMENT OF THE CASE

This litigation was removed from the Circuit Court for Pittsylvania County, Virginia. Plaintiff's Third Amended Complaint alleges negligence and breach of warranty claims against Defendants Robert Burkle GmbH ("Burkle Germany"), Burkle North America, Inc. ("Burkle NA") and Stiles Machinery, Inc. ("Stiles") related to the manufacture, design, installation, and warnings (or lack thereof) of the Machine. The parties have engaged in extensive discovery, and a week-long jury trial is scheduled to begin on November 16, 2020.

### SUMMARY

This case arises from an industrial accident in which Plaintiff was seriously injured in the course of her employment with IKEA when her hair became entangled in a glue spreader machine

(the "Machine") resulting in a degloving of Plaintiff's scalp from her eyebrows to the base of her neck. The Machine was designed and manufactured by Burkle Germany. It is admitted that the safe operation of the Machine depended upon the installation/assembly of Troax safety fences or "wall panels" on each end of the Machine on the outfeed side. Although Burkle Germany maintains that they were attached at the factory and then detached for shipment separate from the Machine, there is no evidence that the wall panels were ever received at the IKEA plant in Danville. In any event, it is undisputed that the wall panels were never installed on the Machine, and they were not present on the Machine on January 29, 2018, just 35 days before Plaintiff's injury on March 5, 2018.

On that date, Mark Joel, a Burkle NA employee, visited IKEA and photographed the Machine. The photographs reveal that there were no wall panels on the Machine at that time. Mr. Joel emailed the photographs of the Machine to various employees of Burkle NA and Burkle Germany. These undisputed facts establish a post-sale duty to warn on both Burkle NA and Burkle Germany. Because it is also undisputed that neither Burkle NA nor Burkle Germany undertook any attempt to warn IKEA or its employees that the Machine was dangerous without the wall panels, Plaintiff is entitled to a ruling and jury instruction that both Burkle NA and Burkle Germany were negligent as a matter of law in failing to provide a post-sale warning.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The Machine was designed, manufactured, and assembled in Germany by Burkle Germany in 2010. Rohrbeck/Burkle Germany Tr., excerpts of which are attached hereto as **Exhibit 1**, at 200-02. The Machine, as designed, included safety fences or wall panels (also referred to as red or green panels) which were manufactured by Troax. Rohrbeck/Burkle Germany Tr. at 134. According to Burkle Germany, it attached the wall panels to the Machine as part of the assembly

process but then detached them before shipping the Machine to the United States. Rohrbeck/Burkle Germany Tr. at 90-91. Burkle Germany admits the wall panels were "absolutely" a safety device that were "essential" for the Machine's safe operation. Rohrbeck/Burkle Germany Tr. at 93. They protect against the risks and potential injuries associated with operator access to the rotating parts of the Machine. Rohrbeck/Burkle Germany Tr. at 95-96, 98. Without the wall panels, the Machine cannot be safely operated. Rohrbeck/Burkle Germany Tr. at 93. However, there was nothing in any document such as the Operating Manual or on the Machine itself warning against operating the Machine without the wall panels in place. Rohrbeck/Burkle Germany Tr. at 178-79.

Burkle NA purchased the Machine from Burkle Germany for the purpose of re-selling it to IKEA. Palmer/Burkle NA Tr., excerpts of which are attached hereto as **Exhibit 2**, at 17, 30-31. In addition to selling the Machine to IKEA, Burkle NA contracted with IKEA to perform the installation and commissioning of the Machine at IKEA's Danville plant. Palmer/Burkle NA Tr. at 38-39. Burkle NA arranged for Stiles, which was by that time was Burkle Germany's North American distributor, to perform the installation and commissioning in July 2011. Palmer/Burkle NA Tr. at 39-40, 74-75; Poole/Stiles Tr. excerpts of which are attached hereto as **Exhibit 3**, at 10.

Christopher Poole performed the installation at IKEA on behalf of Stiles with respect to the mechanical and electrical components. Poole/Stiles Tr. at 14. According to Mr. Poole, the wall panels were not present with the Machine at IKEA when he arrived to perform the installation, and thus, the wall panels were not installed on the Machine. Poole/Stiles Tr. at 56-57, 72-73. Similarly, the IKEA employees who have been identified as being in a position to know whether the wall panels were ever at IKEA have testified that the panels were never seen with the Machine or at the IKEA plant. Allen Tr., excerpts of which are attached hereto as **Exhibit 4**, at 11-12;

Blake Tr., excerpts of which are attached hereto as **Exhibit 5**, at 19-20, 37, 64; Kauneckas Tr., excerpts of which are attached hereto as **Exhibit 6**, at 21; Riddle Tr., excerpts of which are attached hereto as **Exhibit 7**, at 25, 48.

In January 2018, Mr. Joel was an account manager for Burkle NA, which was then, once again, Burkle Germany's North American distributor and a wholly owned subsidiary of Burkle Germany. Palmer/Burkle NA Tr. at 9, 96-97. His accounts included IKEA. Id. On January 29, 2018, about five weeks before Plaintiff's accident on March 5, 2018, Mr. Joel conducted a site visit at IKEA's Danville, Virginia plant. Palmer/Burkle NA Tr. at 98-99. As a result of that visit, Mr. Joel prepared a visit report and emailed it (also on January 29, 2018) to a number of Burkle NA employees, including then-President and CEO, Helfried Weinzerl, and four Burkle Germany employees, including a member of Burkle Germany's project department. Palmer/Burkle NA Tr. at 99-100; Ex. D-36; Rohrbeck/Burkle Germany Tr. at 126-27. The email and visit report included photographs of the Machine taken by Mr. Joel on the date of his visit. Palmer/Burkle NA Tr. at 100; Ex. D-36. The report reveals that Mr. Joel inspected the Machine, noting that it is "worn out". Ex. D-36. The attached photos show the wall panels are clearly missing from the Machine. Rohrbeck/Burkle Germany Tr. at 124-25, 127-28; Ex. D-10. Following Mr. Joel's IKEA site visit and the emailed site report with photographs, there were no follow-up communications from either Burkle NA or Burkle Germany regarding the safety of the Machine in general or the absence of the wall panels. Palmer/Burkle NA Tr. at 102, 104, 108, 149; Rhorbeck/Burkle Germany Tr. at 127. Without the wall panels attached, the Machine constituted a "high danger" of injury. Rhorbeck/Burkle Germany Tr. at 128.[1]

---

[1] In addition to Mr. Joel's 2018 visit, Burkle Germany employees visited the IKEA Danville plant in 2013 and 2014 at which times they observed the BOS line (of which the Machine was a part). It would have been apparent that the wall panels were missing from the Machine; however, no photographs taken by those employees have been produced in discovery.

29395/8001/9484123v1

Just thirty five days later, on March 5, 2018, Plaintiff was injured when her hair became entangled in the rotating parts of the Machine. The wall panels, if attached to the Machine, would have covered the location where Plaintiff's hair became entangled, preventing her injury. Burkle Germany's Ans. to Pl.'s 1st Interrog., an excerpt of which is attached hereto as **Exhibit 8**, Interrog. #4; Burkle Germany's Ans. to Pl.'s 2d Interrog., an excerpt of which is attached hereto as **Exhibit 9**, Interrog. # 1.

## STANDARD OF REVIEW

A court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate when the court, viewing the record as a whole and drawing reasonable inferences in the light most favorable to the nonmoving party, determines that the Rule 56 standard has been met. Thurston v. Am. Press, 497 F. Supp. 2d 778 (W.D. Va. 2007) (granting summary judgment and citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-24, 106 S. Ct. 2548 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50, 106 S. Ct. 2505 (1986); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). Partial summary judgment may be granted on a particular claim or defense even where issues of fact preclude summary judgment on the case as a whole. Fed. R. Civ. P. 56.

> The function of the judge at the summary judgment stage is not to determine the truth of a matter or to weigh credibility but to determine whether there is any genuine issue of fact that can only properly be resolved by a finder of fact because it could reasonably be resolved in favor of either party.

Glover v. Oppleman, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001).

## ARGUMENT AND AUTHORITIES

Although a manufacturer has no continuing duty to warn under warranty principles, it does have a continuing or post-sale duty to warn based in negligence under certain circumstances. Moyers v. Corometrics Med. Sys., Inc., 210 F.3d 361, n.6 (4th Cir. 2000); A.J. Buck & Son, Inc., for Use & Ben. of Atl. Mut. Ins. Co. v. Crown Equip. Corp., 34 F.3d 1066, 1994 WL 501933, at *1 (4th Cir. 1994) ("a manufacturer can be held liable under a negligence theory for breach of a continuing duty to warn if it learns of a defect after sale and fails to warn purchasers."); Bly v. Otis Elevator Co., 713 F.2d 1040 (4th Cir. 1983) (4th Cir. 1985) ("under negligence theory the duty to warn is continuous and is not interrupted by manufacture or sale of the product"); Higgins v. Forest Labs., 48 F.Supp.3d 878, 883 n.5 (W.D. Va. 2014) ("a negligence claim is unique").  The Supreme Court of Virginia has yet to expressly recognize a post-sale duty to warn, but federal courts applying Virginia law have predicted that it would do so if presented with the issue.  See Putman v. Savage Arms, Inc., Civil Action No. 7:17-cv-168, 2019 U.S. Dist. LEXIS 33034 (W.D. Va. Mar. 1, 2019); Russell ex rel. Russell v. Wright, 916 F. Supp. 2d 629, 650 (W.D. Va. 2013); King v. Flinn & Dreffein Eng'g Co., No. 7:09-cv-00410, 2012 U.S. Dist. LEXIS 68133, at *13-25 (W.D. Va. May 16, 2012); Rash v. Stryker Corp., 589 F. Supp. 2d 733, 735 (W.D. Va. 2008); Royal Indem. Co. v. Tyco Fire Prods., LP, 281 Va. 157, 169 n.3, 704 S.E.2d 91, 97 (2011); Harris v. T.I., Inc., 243 Va. 63, 72, 413 S.E.2d 605, 610 (1992).

As recognized by the Restatement and applied by federal courts (cited above) applying Virginia law, a manufacturer, seller, or distributor is subject to liability for negligent post-sale failure to warn "if a reasonable person in the seller's position would provide such a warning." Restat. 3d of Torts: Products Liability, § 10.

> A reasonable person in the seller's position would provide a warning after the time of sale if:

>(1) the seller knows or reasonably should know that the product poses a substantial risk of harm to persons or property; and
>
>(2) those to whom a warning might be provided can be identified and can reasonably be assumed to be unaware of the risk of harm; and
>
>(3) a warning can be effectively communicated to and acted on by those to whom a warning might be provided; and
>
>(4) the risk of harm is sufficiently great to justify the burden of providing a warning.

Id.

In the present case, the first element is satisfied. The Machine's manufacturer, Burkle Germany, admits that the Machine cannot safely be operated and constitutes a high danger of entanglement injury without the wall panels. Rhorbeck/Burkle Germany Tr. at 93, 95-96, 98, 128. Burkle NA, as a wholly owned subsidiary of Burkle Germany and its authorized North American distributor (both at the time of the sale of the Machine to IKEA and at the time of Mr. Joel's 2018 visit to IKEA), reasonably should have known the same.

The second and third elements are also established in this case. Mr. Joel was an account manager for Burkle NA. His accounts included IKEA. Burkle NA and Burkle Germany were aware that IKEA owned the Machine and were actively marketing IKEA to purchase a replacement for it. That was the purpose of Mr. Joel's January 29, 2018 visit to IKEA. Ex. D-36. Thus, IKEA and its workers like Plaintiff were easily identifiable as a persons to whom a warning could be provided. IKEA employees in general, and specifically Plaintiff, did not know the Machine was supposed to have wall panels attached. There is no evidence that the wall panels were received with the Machine when it was shipped from Germany. It is undisputed that Stiles did not attach the wall panels during installation of the Machine. Poole/Stiles Tr. at 56-57, 72-73. The Machine's Operating Manual does not contain any mention or description of the wall panels.

Rohrbeck Tr. at 171, 179; Ex. D-29. Thus, IKEA's employees had no reason to know that the wall panels were part of the Machine's design; that they should have been present on the Machine; or that the Machine was dangerous to operate without them. Had a warning been given following Mr. Joel's visit, measures could easily have been taken to avoid the horrific injury to Plaintiff that occurred a month later.

Finally, the balancing of hardships encompassed in the fourth element weighs heavily in favor of providing a warning. The burden on Burkle Germany and Burkle NA to provide a warning to IKEA and its employees following the January 29, 2018 visit, after they had actual knowledge of the absence of wall panels on the Machine, was minimal. It could have been accomplished by a simple email or telephone call. However, the risk of harm was substantially great. In the present case, it was Plaintiff's hair that became entangled resulting in serious injury, but the risk also included that a hand or arm could be entangled.

Despite these undisputed facts, neither Burkle Germany nor Burkle NA provided any warning at the time of the sale that operation of the Machine without the wall panels rendered the Machine unsafe nor did they communicate in any manner following Mr. Joel's January 29, 2018 visit regarding such a danger.

## CONCLUSION

As a matter of law, both Burkle Germany and Burkle NA owed IKEA and Plaintiff a post-sale duty to warn, and they both failed to provide any such warning. Accordingly, Plaintiff is entitled to a ruling in her favor that Burkle Germany and Burkle NA are negligent for violating their post-sale duty to warn. Because Defendants have asserted contributory negligence as an affirmative defense, for which factual disputes exist which preclude summary judgment, Plaintiff

respectfully requests a jury instruction that Burkle Germany and Burkle NA are negligent as a matter of law for violating their post-sale duty to warn.

Respectfully submitted this 18th day of August, 2020.

ANDREA LEIGH HUFFSTETLER

By: */s/ Glenn W. Pulley*
Of Counsel

Glenn W. Pulley (VSB No. 15677)
Amanda M. Morgan (VSB No. 70210)
Evans G. Edwards (VSB No. 79588)
Andrew D. Finnicum (VSB No. 80358)
Matthew W. Broughton (VSB No. 25226)
GENTRY LOCKE
P.O. Box 6218
Lynchburg, VA 24505
Phone: (434) 455-9940
Fax: (434) 455-9941
pulley@gentrylocke.com
morgan@gentrylocke.com
edwards@gentrylocke.com
finnicum@gentrylocke.com
broughton@gentrylocke.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of August, 2020, I electronically filed the foregoing with the Clerk of Court for the United States District Court for the Western District of Virginia using the CM/ECF system, which will send notification of such filing (NEF) to all CM/ECF registered attorneys on the NEF.

/s/ Glenn W. Pulley
Counsel

29395/8001/9484123v1